UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LYSSA MARIE MAY FORBES,

    Plaintiff,

v.                                                           Case No. 3:21-cv-1256-MAP

COMMISSIONER OF SOCIAL SECURITY

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income (SSI).[1] Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to address the total number of hours she can stand and walk in an eight-hour workday, or how long she can walk and stand uninterrupted, without changing positions; and by failing to correctly evaluate the fluctuating nature of her bipolar disorder. As the ALJ's decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

    I.    *Background*

Plaintiff, who was born in 1997, claimed disability beginning May 9, 2019 (Tr. 158, 170).[2] She was 21 years old on the alleged onset date. Plaintiff's childhood was especially traumatic: her biological parents were both severe drug and alcohol addicts; she and her siblings were left unattended when a house fire erupted, killing her infant brother who was unable to escape; she was sexually abused by her biological father and brother; she was adopted by her grandparents in 2010; she has a history of self-harm due to burning and cutting since the age of 14; she was sexually harassed by her supervisor at Pizza Hut; she was sexually and emotionally abused by a former boyfriend (Tr. 605-606). Plaintiff obtained a high school equivalency education and although she briefly worked as a waitress, this job did not equate to past relevant work (Tr. 174-181). Plaintiff alleged disability due to post traumatic stress disorder, depression, bipolar disorder, nightmares, ADHD, scoliosis (with two 14-inch rods and 18 screws), and ovarian cysts (Tr. 69).

Given her alleged disability, Plaintiff filed an application for SSI (Tr. 62-68). The Social Security Administration (SSA) denied Plaintiff's claim initially and upon reconsideration (Tr. 69-92). Plaintiff then requested an administrative hearing (Tr. 112). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 37-60). Following the hearing, the ALJ issued an unfavorable decision

---

[2] Originally, Plaintiff claimed a disability onset date of July 12, 2011, however she amended her onset date to May 9, 2019. *See* Tr. 170.

finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 18-36).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since May 16, 2019, the application date (Tr. 23). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: scoliosis with rods; bipolar disorder; post-traumatic stress disorder; obsessive compulsive disorder; and a history of polysubstance abuse (Tr. 23). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 23). The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 416.967(a) with the following restrictions:

> … occasional climbing of ramps and stairs, balancing, stooping, and kneeling; no climbing of ladders, ropers, or scaffolds; no crouching or crawling; no exposure to hazards or vibration; unskilled work only; simple tasks decision making comparable to reasoning level of 2 as defined by the DOT; average production pace and quota; occasional interaction with others, which should be in a non-confrontational static environment meaning no conflict resolution, arbitration, or negotiating as part of the basic work tasks; infrequent changes in the work.

(Tr. 25). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her

symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 25).

The ALJ concluded that transferability of job skills was not an issue because Plaintiff does not have past relevant work (Tr. 30). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as an addresser, DOT 209.587-010; call out operator, DOT 237.367-014; or cutter/paster, DOT 249.587-014 (Tr. 30-31). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 31). Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 12-17). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

II.     *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

4

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews

the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

  III. Discussion

Plaintiff argues that the ALJ erred by failing to address the total number of hours she can stand and walk in an eight-hour workday, or how long she can walk and stand uninterrupted, without changing positions; and by failing to correctly evaluate the fluctuating nature of her bipolar disorder. I start with a discussion of the ALJ's evaluation of Plaintiff's bipolar disorder because it is not supported by substantial evidence and requires remand.

### A. Bipolar disorder

Citing to her frequent medication changes and unstable moods related to her bipolar disorder, Plaintiff states the medical evidence demonstrates she lacks the ability to maintain sustained full-time employment. Plaintiff claims that she has structured her life to minimize her stress and reduce her symptoms, and that the ALJ's reliance on her stability is misplaced. Against this backdrop, Plaintiff asserts that remand is warranted because the ALJ failed to consider the episodic nature of her bipolar disorder. The Eleventh Circuit has squarely addressed the episodic nature of bipolar disorder in three recent decisions, and has held that when a claimant suffers from bipolar disorder, an RFC assessment must consider its episodic nature. *See Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094 (11th Cir. 2021); *Samuels v. Comm'r of Soc. Sec.*, 959 F.3d 1042, 1047 (11th Cir. 2020); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019). While the ALJ in this case found Plaintiff's bipolar disorder a severe impairment at step two, it is unclear whether she properly considered its episodic nature in crafting the RFC. In other words, the ALJ failed to provide enough discussion to permit a meaningly judicial review. As a result, following the Eleventh Circuit's recent guidance, remand is required.

Following her determination at step two that Plaintiff suffered from an array of severe impairments including bipolar disorder, obsessive-compulsive disorder, and PTSD, the ALJ discussed Plaintiff's testimony about "significant mental health symptoms, frequent thoughts of self-harm, 'spurts' of depression daily, and 'extreme' feelings of depression 'at least' five times a week" (Tr. 26). The ALJ noted Plaintiff's

reports of nightmares three to four times a week with low energy the next day, mental triggers working around people, and difficulty concentrating and persisting at tasks she starts (Tr. 26). Nonetheless, the ALJ summarily concluded that "while she has limitations in mental functioning, she maintains the ability to perform mental functions required for consistent work" (Tr. 26). Citing to Plaintiff's desire to work and recent marriage, the ALJ stated that "the adjudged residual functional capacity accounts for the complaints and associated limitations" (Tr. 26).

In considering the medical evidence, the ALJ discussed that psychiatric medications worked "pretty well," that Plaintiff was agreeable to therapy, and that mental status exams revealed she was "within normal limits" (Tr. 27-28). Although the ALJ's citations to record evidence are accurate, review of the medical evidence reveals that following her voluntary psychiatric hospitalization in July 2019, Plaintiff continued to have periods of mood instability and irritability and periods of increased energy that can last for days (Tr. 410-412). By August 2019, Plaintiff reported that her thoughts were more organized but she continued to have issues with concentration (Tr. 416-419); in February 2020, Plaintiff reported difficulty sleeping and nightmares and stated she had stopped all medications except Abilify (Tr. 452). In May 2020, Plaintiff reported that she had thoughts of self-harm two weeks ago and was suffering from flashbacks; she was directed to stay with her mother to allow her medications time to work (Tr. 476). In December 2020, Plaintiff returned after a hiatus in treatment, reporting that her abusive fiancé had not allowed her to continue treatment and asked to "go back on her meds" (Tr. 472). At this appointment, Plaintiff noted

periods of staying up for multiple days straight jumping from one task to the next (Tr. 472). The next month, January 2021, Plaintiff described her mood in "disarray" and reported having periods of being down and feeling helpless and hopeless, then periods of mania where she is "all over the place" (Tr. 470).

While the ALJ need not refer to each and every treatment note, the ALJ must demonstrate that she considered Plaintiff's medical condition as a whole. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (ALJ need not cite every piece of evidence in the record" but must demonstrate he "considered the claimant's medical condition as a whole"); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (ALJ not required to specifically address every piece of evidence in the record). Here, aside from the ALJ's reference to Plaintiff's testimony on the issue, any discussion of Plaintiff's difficulty maintaining mental stability is conspicuously missing from the ALJ's sparse summary of the medical evidence. As in *Simon*, the ALJ's references to office visit notes reflecting Plaintiff's mood as "euthymic" and her affect as "congruent" or that "no abnormal mental health findings were noted," although true, hardly establish that Plaintiff does not suffer from debilitating mental illness. *Simon*, 7 F.4th at 1106. Chronic mental disorders are characterized by "unpredictable fluctuation of their symptoms, and thus it is not surprising that even a highly unstable patient will have good days or possibly good months." *Simon*, 7 F.4th at 1106 (citing *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)). For those who suffer from chronic disorders, "'a snapshot of any single moment says little about [a person's] overall condition,' and an ALJ who relies on such snapshots to discredit the remainder of a

9

psychiatrist's findings demonstrates a 'fundamental, but regrettably all-too-common, misunderstanding of mental illness.'" *Simon*, 7 F.4th at 1106 (quoting *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011)). "[I]t is improper for an ALJ to dismiss a psychiatrist's treatment notes as 'indicating only mild limitations … at best' simply because 'some of [the claimant's] mental-status examination were better than others.'" *Simon*, 7 F.4th at 1106 (quoting *Schink*, 935 F.3d at 1262). Like the claimant in *Simon*, the Plaintiff's diagnosis caused Plaintiff to experience more serious symptoms than those acknowledged by the ALJ. As Dr. Anderton reported:

> Evidence shows inconsistency in [Plaintiff's] adult treatment and compliance. It is important to understanding that this is a very common issue in treatment of bipolar disorder. Due to the nature of the disease (including fluctuating mood states, impairments of insight and judgment, impaired impulse control) inconsistency is almost predictable, particularly in young adults.

(Tr. 610).

Contrary to the ALJ's statement that she "considered all symptoms" when she assessed Plaintiff's RFC, the record and the decision demonstrate otherwise. The SSA neglected to obtain a psychological evaluation even after Dr. John Foster, the consultative physician who examined Plaintiff, opined that Plaintiff's "social interaction and adaptation [were] impaired during psychotic episodes" and recommended that a psychological evaluation be ordered (Tr. 445). Despite noting Plaintiff's testimony that she has difficulty concentrating and persisting at tasks, it seems that the ALJ relied upon Plaintiff's daily activities of cleaning, cooking, washing dishes, and caring for her pet as proof that Plaintiff's "statements about the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the

medical evidence and other evidence" (Tr. 26). The ALJ opined that "clinical evidence shows that stability can be achieved with medication management" and that "she maintains the ability to perform mental functions required for consistent work," however, the ALJ failed to cite evidentiary support for this conclusion (Tr. 26).

As the Eleventh Circuit noted in *Schink*, everyday tasks are hardly indicative of a claimant's ability to function in a work environment. *Schink*, 935 F.3d at 1266. Plaintiff suffers from obsessive compulsive disorder (an impairment the ALJ found severe at step two) and reports she spends "most of the time out of her day … constantly rearranging multiple objects" (Tr. 473). Certainly, Plaintiff's ability to clean, cook, and otherwise function at home are hardly indicative of how she would function in a more demanding work setting. *See Schink*, 935 F.3d at 1266 ("Indeed, Social Security regulations acknowledge that the ability to complete tasks in settings that are less demanding than a typical work setting 'does not necessarily demonstrate [an applicant's] ability to complete tasks in the context of regular employment during a normal workday or work week. 20 C.F.R. pt. 404, subpt, P, app. 1, § 12.00(C)(6)(b). That is especially relevant where, as here, an applicant spends most of his time among familiar (or no) people and a steady environment, so his behavior does not necessarily show how he would function in a work setting on a sustained basis. *See id*. pt. 404, subpt. P, app. 1, § 12.00(D)(3)(b).'").

Taking everything together, I cannot conclude that substantial evidence supports the ALJ's RFC finding as it is unclear whether the ALJ properly considered Plaintiff's mental impairments, including the episodic nature of her bipolar disorder,

in her RFC assessment. *See Schink*, 935 F.3d at 1269 (acknowledging that the RFC determination requires a "more detailed assessment" of a claimant's mental functioning than the broad categories in paragraph B); Tr. 25 (same). *See, e.g., Gilet v. Comm'r of Soc. Sec.*, No. 2:20-cv-457-NPM, 2022 WL 950639 (M.D. Fla. Mar. 30, 2022) (remanding where ALJ failed to provide enough information in decision regarding what limitations he attributed to claimant's bipolar disorder); *Pinder v. Comm'r of Soc. Sec.*, No. 6:20-cv-1164-MRM, 2021 WL 6062378 (M.D. Fla. Dec. 22, 2021) (finding ALJ's decision unsupported by substantial evidence where ALJ failed to consider fluctuations in symptoms and objective medical findings related to bipolar disorder).

Relatedly, the ALJ failed to provide sufficient reasons for finding Dr. Jessica Anderton's opinions unpersuasive. Dr. Anderton, retained by Plaintiff's counsel, opined that "claimant met the Listing for 12.04 and the Listing 12.15 with marked limitation in her ability to interact with others, extreme limitation in concentration, persistence, and maintenance or pace, and marked ability to adapt and manage oneself" and "severe" limitations for her ability to sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them and the ability to set realistic goals or make plans independently of others (Tr. 29).[3] With no specific citations to the medical evidence, the ALJ found Dr.

---

[3] Earlier in the decision, the ALJ stated that "[n]o medical expert has opined the claimant's impairments, considered singly or in combination, are equivalent in severity to the criteria of any listed impairment …" (Tr. 23).

12

Anderton's opinions "unpersuasive," stating the Dr. Anderton "checked boxes" but failed to support her opinions with findings from treatment records or from her own evaluation (Tr. 29).[4] The ALJ stated only that Dr. Anderton's opinions were not consistent with "claimant's treatment notes [that] generally indicate, even from childhood, that the claimant's symptoms are well controlled with medication compliance, and she is able to remain stable" (Tr. 29). In a conclusory fashion, the ALJ stated that Plaintiff's "clinical presentations with her treating providers" do not corroborate the level of symptoms or limitations she reported (Tr. 29), but she failed to cite to any specific record evidence. Upon review, this Court is left to guess as to which particular records the ALJ asserts support her decision, and that would entail impermissibly re-weighing the evidence. *See Bloodsworth*, 703 F.2d at 1239. Absent an explanation from the ALJ, this Court cannot determine whether the ALJ's finding that Dr. Anderton's opinions were "unpersuasive" and "inconsistent" with the medical evidence is supported by substantial evidence.

The ALJ's discussion of Dr. Anderton's opinions about Plaintiff's ability to function socially is particularly flawed. In support of her conclusion that Plaintiff's social functioning is greater than assessed by Dr. Anderton and alleged by Plaintiff, the ALJ referred to Plaintiff's "good interaction with providers," her marriage, and the

---

[4] The weight given to a report of a consulting physician does not depend on who retained the physician. *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995), as amended (Apr. 9, 1996). "An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." *Id.* (citation omitted).

fact that she "liv[es] with her grandmother" (Tr. 29). While the record evidence shows that during the relevant time period Plaintiff lived either with her sister, her grandmother, or with Connie (a mother-like figure) and that after her marriage, Plaintiff and her husband lived with her grandmother (Tr. 422, 473, 476, 606, 609), these living arrangements do not demonstrate Plaintiff's ability to function socially. Rather, as Dr. Anderton noted, "[Plaintiff] appears significantly dependent on others, and has not established any independence in her adult life due to her unstable psychiatric symptoms" (Tr. 609). Dr. Anderton further noted that "[Plaintiff] and her husband live together in her grandmother's garage, converted into a bedroom" and "are moving to their own place soon, which will be right behind her current home, so she won't be far from her grandmother" (Tr. 609).

Lastly, in an attempt to explain why, at times, the record depicts Plaintiff's mental instability, the ALJ seems to have improperly substituted her judgment for that of the medical experts. *See generally Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) ("An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own unformed medical evaluations for those of claimant's treating physicians."). The ALJ stated "claimant may have marked limits when she is abusing alcohol, however, when she is medically compliant and sober, she is stable and able to function with no more than moderate limits which further refute Dr. Anderton's assessment." (Tr. 29-30). Although Plaintiff's July 2019 psychiatric hospitalization records indicate she self-referred herself after binging on alcohol (Tr. 396), the longitudinal medical history does not demonstrate a pattern of alcohol abuse. In fact, Dr. Anderton's report

indicates: "Substance Abuse History: None reported other than an episode of heavy drinking associated with a manic episode (and being off her medication) last year. No history of substance abuse diagnosis or treatment. No current substance abuse." (Tr. 607). On remand, the ALJ should reconsider this too.

    B. *Remaining argument*

Plaintiff also argues that the ALJ committed reversible error by failing to address the total number of hours she can stand and walk in an eight-hour workday, or how long she can walk and stand uninterrupted, without changing positions. The Court does not need discuss this issue because remand is appropriate for the ALJ to re-evaluate Plaintiff's mental impairments, including the episodic nature of her bipolar disorder.

    IV.    *Conclusion*

Accordingly, after consideration, it is hereby

ORDERED:

    1. The decision of the Commissioner is reversed and remanded.

    2. The Clerk is directed to enter final judgment in favor of the Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 25th day of October, 2022.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

15